ALLEN, Judge.'
The appellant in this case was convicted on a charge of driving an automobile while intoxicated and causing the death of a human being. Appellant moved for a new trial, which was denied, and was sentenced to a term of two years in the State Penitentiary.
The information filed against the appellant was in two counts, the first charging manslaughter by culpable negligence and the other charging manslaughter from operating an automobile while intoxicated.
Two separate counts or charges are often made by the State when prose *318 cuting a defendant for a death resulting from driving an automobile while intoxicated, one of which charges culpable negligence. If the State proves a death resulting from the operation of an automobile while intoxicated, this meets the requirements of statutory manslaughter set forth in Florida Statutes, Section 860.01, F.S.A.
It is not sufficient under Section 860.01, Florida Statutes, F.S.A., to prove that the defendant was under the influence of intoxicating beverages; it must be proved the defendant was intoxicated. If, however, manslaughter by reason of culpable negligence is charged, the State may show that the defendant was intoxicated or under the influence of intoxicating beverages in addition to other acts which tend to ■show culpable negligence.
In this case, the defendant, Clowney, was charged on two counts. One, manslaughter through culpable negligence, and the other causing a death while driving an automobile in an intoxicated condition; two separate charges. Was the defendant prejudiced by the charge of the lower ■court that:
“If the death of any human being be caused by the operation of an automobile by a person under the influence of intoxicating liquor, he shall be deemed guilty of manslaughter, and upon conviction, shall be punished as provided by the law relating to manslaughter.” ?
Florida Statutes, Section 860.01, F.S.A., provides:
“Driving automobile while intoxicated; punishment. — It is unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquor to such extent as to ■deprive him of full possession of his normal faculties, to drive or operate ■over the highways or streets or thoroughfares of Florida any automobile, truck or vehicle or motorcycle or any other vehicle propelled by gasoline, gas, vapor, electricity, steam or other power. Any person convicted of a violation of this section shall be punished as provided by section 317.20.
“If however, damage to property or person of another, other than damage resulting in death of any person, is done by said intoxicated person under the influence of intoxicating liquor to such extent as to deprive him of full possession of his normal faculties, by reason of the operation of any of said vehicles mentioned herein, he shall upon conviction be fined not more than five hundred dollars, and also be imprisoned not less than three months nor more than twelve months, and if the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter and, on conviction be punished as provided by existing law relating to manslaughter.
“Convictions under the provisions of this section shall not be a bar to any civil suit for damages against the person so convicted.”
The Judge of the Criminal Court of Record charged the jury that the defendant, James Raymond Clowney, was charged with manslaughter in two counts, the first count being that the defendant did unlawfully, by and through his own act, procurement and culpable negligence, operate an automobile in such a manner as to cause the death of Claude L. Todd, and in count 2 did unlawfully, while intoxicated by the voluntary use of alcoholic liquor, operate a certain automobile in such a manner as to run up or against an automobile in which Claude L. Todd was present, with such force and violence as to cause said automobile in which the said Claude L. Todd was present to catch afire, thereby inflicting in and upon the person of said Claude L. Todd certain mortal injuries, of which injuries the said Claude L. Todd then and there languished and died, etc.
*319 The Judge below then charged the jury-on the various degrees of homicide and manslaughter, all of which were applicable to count 1 of the Information. The court then charged the jury as follows:
“As to the second Count of Manslaughter While Intoxicated by the Voluntary Use of Alcoholic Liquor. It is unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquor to such extent as to deprive him of full possession of his normal faculties, to drive or operate over the highways or streets, or thoroughfares of Florida, any automobile, truck or vehicle or motorcycle or any other vehicle propelled by gasoline, gas, vapor, electricity, steam or other power. Any person convicted of a violation of this section shall he punished as provided by law. If the death of any human being be caused by the operation of an automobile by a person under the influence of intoxicating liquor he shall be deemed guilty of Manslaughter, and upon conviction shall be punished as provided by the law relating to Manslaughter.
“Intoxication, Lady and Gentlemen, I charge you, as used in the second Count of the Information, means under the influence of Intoxicating liquor to such an extent as to deprive one of the normal control of one’s body or mental faculties, or both.”
The Court then gave the following requested charge by the State:
“Lady and Gentlemen of the Jury, you are instructed that under the Statute creating offense of manslaughter by intoxicated motorist, the State has no burden to prove that at the time of the accident the defendant was negligent, but such element is established if it be shown that the defendant was not at the time of the accident in possession of his faculties due to the voluntary use of intoxicants.”
The jury returned the following verdict:
“We, the jury, at Fort Lauderdale, Broward County, Florida, this 26th day of January A.D. 1956, find the defendant James Raymond Clowney Guilty as to Count II of the Information. So say we all.”
The effect of the above verdict was to find the defendant Not Guilty of the manslaughter charge based on culpable negligence.
The defendant moved for a new trial and, among other grounds, alleged the errors of the court in instructing the jury the defendant could be found guilty of manslaughter if he caused the death of a person while operating an automobile while under the influence of intoxicating liquor; also for failing to give a requested instruction of the defendant.
In the case of Cannon v. State, 1926, 91 Fla. 214, 107 So. 360, 362, the Supreme Court in an Opinion by Chief Justice Brown, said:
“The language of the indictment, while sufficient to charge the offense defined in section 5039 [F.S.A. § 782.07], the gist of one element of which is the culpable negligence of the defendant as being the cause of the death, was not sufficient to constitute a charge of manslaughter under this amendatory act. The additional words in the indictment, ‘being at the time under the influence of intoxicating, liquor,’ are not, in the commonly accepted meaning of such words, synonymous with or equivalent to the words in the amendatory statute, which are ‘while intoxicated.’ Though all persons intoxicated by the use of alcoholic liquors are ‘under the influence of intoxicating liquors,’ the reverse of the proposition is not true; for a person may be under the influence of intoxicating liquors without being intoxicated.”
*320 The Court further stated:
“It was permissible, as shown by some of the cases above cited, to allow the state to introduce evidence showing or tending to show that the defendant was under the influence of intoxicating liquor at the time the deceased was struck and injured, or that she was in that condition so shortly thereafter as to afford a reasonable inference that such condition existed at the time of the injury. See, also, 1 Wigmore on Evidence (2d Ed.) 235, This was admissible in support of the charge of culpable negligence, upon the theory that, ordinarily, persons under the influence of intoxicants to any considerable degree, though not actually intoxicated or drunk, are more apt to be heedless, reckless, and daring than when free from such influence. Hobbs v. State, supra [83 Fla. 480, 91 So. 555]; Meier v. State, supra [87 Fla. 133, 99 So. 124].”
In the case of Taylor v. State, Fla.1950, 46 So.2d 725, the Florida Supreme Court held in a case where the defendant was faced with two charges, one, that in operating an automobile while intoxicated he caused it to collide' with a car occupied by one, Morris Wellin, who died from the injuries received in the wreck, and the other, that while under the influence of intoxicating liquor he so negligently and carelessly drove his car that he inflicted injuries upon Wellin bringing about his death, that references in the second charge of driving while under the influence of intoxicating liquor were not prejudicial to the defendant though such words were not an element in the charge of manslaughter caused by culpable negligence. The court in its opinion said:
“In this particular case we are strengthened in this view because, after all, at the time the cause was submitted to the jury the defendant stood directly charged with the offense of operating his car ‘while intoxicated,’ a separate and distinct offense denounced under Section 860.01, Florida Statutes 1941, and F.S.A. Certainly . throughout the course of the trial the jury properly heard of the defendant’s alleged intoxication, and of course the term, ‘intoxicated,’ is stronger and includes the term, ‘under the influence of intoxicating liquor.’ Cannon v. State, 91 Fla. 214, 107 So. 360, 362.”
In the case of Dunning v. State, Fla.1955, 83 So.2d 702, the defendant was convicted of manslaughter resulting from the operation of an automobile. ■ . . ■
The State charged the defendant in, one count of the indictment with homicide resulting from culpable negligence, .and driving while intoxicated. >
The defendant claimed that where the State had elected to create one offense of culpable negligence and driving while intoxicated combine, the State should be required to prove all of the essential mate-trial allegations of the indictment pnd that failing to do so, the defendant should have been acquitted. The Supreme Court in its Opinion concurred in the premise that the State, when it elects to charge the defendant in one count with homicide resulting from negligent operation and from driving while intoxicated, must carry the burden of proving beyond a reasonable doubt both elements of the offense; and when properly requested, the trial judge should so instruct the jury.
The Court concluded from the charge of the lower court that both elements had been included and the lower court was affirmed.
The Supreme Court of Florida in the case of Smith v. State, Fla.1953, 65 So.2d 303, 306, said:
“* * * The jury had exonerated him of being ‘intoxicated’. That is the degree of drunkenness defined in the manslaughter statute and we held long ago that ‘intoxication’ and *321 ‘being under the influence of intoxicating liquors’ are different terras and do not mean the same thing. Cannon v. State, supra. It is unlawful to drive a car while ‘under the influence of intoxicating liquors’ but it is not manslaughter if one in such condition runs into and kills another unless ‘culpable negligence’ is shown. We have held that ‘testimony tending to show that a defendant, charged only with culpable negligence, was under the influence of intoxicants at the time of an automobile collision is admissible, on the theory that a driver so exhilarated is likely to be abnormally reckless.’ Taylor v. State, Fla., 46 So.2d 725. Such evidence, however, cannot make an act wanton and reckless that was not otherwise so. It is valuable and useful only to corroborate or render more likely, evidence that is doubtful or disputed.”
This court is of the opinion that while the Judge of the lower court was in error in his instruction to the jury, to-wit:
“If the death of any human being be caused by the operation of an automobile by a person under the influence of intoxicating liquor, he shall be deemed guilty of manslaughter, and upon conviction, shall be punished as provided by the law relating to manslaughter.” ;
in view of the fact that the court in the subsequent paragraph defined intoxication as follows:
“Intoxication, lady and gentlemen, I charge you, as used in the second count of the Information, means under the influence of intoxicating liquor to such an extent as to deprive one of the normal control of one’s body or mental faculties, or both.”,
such error was not prejudicial.
A great deal of confusion is caused in criminal prosecutions by the use, interchangeably, of the terms “intoxicated” and “under the influence of intoxicating beverages”. These terms are not synonymous. A person intoxicated is under the influence of intoxicating beverages, but it does not necessarily follow that a person under the influence of intoxicants is intoxicated. If a person is prosecuted on a charge of causing the death of a person while intoxicated, it must be proven beyond a reasonable doubt that the defendant was intoxicated and not just under the influence of intoxicants.
In view, however, of a study of all the charges given by the Judge of the lower court, we are of the opinion that the misuse in one part of the charge of the words “under the influence of intoxicating liquors” for the word “intoxicated” was not prejudicial.
The Attorney General, in his brief, questions the right of this Court to consider the questions appearing in the appellant’s brief on the basis that:
“A perusal of the record on appeal reveals that, in fact, the appellant has filed no Assignments of Error as required by law, although his brief refers to specific Assignments of Error. It has long been the law that a brief of appellant must refer to specific Assignments of Error.”
The appellant in his reply brief states:
“Assignments of Error were prepared and a copy furnished the County Solicitor of Broward County, the prosecuting attorney in this cause, by personal delivery on March 28, 1956. A certificate evidencing such service was signed by trial counsel in this cause and appears on the certified copy of the Assignments of Error now before this Court. These Assignments of Error did not appear in the original Transcript of Record, which can be explained in either one of two ways—either the original was delivered to the Clerk’s office for filing and subse *322 quently became either misfiled or not filed, or the original never did reach the Clerk’s office either by reason of misdirection or by failure of trial counsel to deliver such Assignments to the Clerk’s office.
“Duplicate Assignments of Error ■were subsequently on 1 March, 1957, filed in the office of the Clerk of the Criminal Court of Record of Brow-ard County, and a certified copy of such Assignments forwarded to this Court for inclusion in the Transcript of Record and a copy mailed to counsel for the State.
“The original Brief of Appellant in this cause referred to the Assignments of Error in support of the points raised, as these Assignments appeared in the office file of trial counsel in this cause. This Brief of Appellant was served upon counsel for the State by mail on October 12, 1956, and filed with this Court on the same day.
“Stipulations extending the time for filing of Appellee's Brief were subsequently executed pursuant to requests by counsel for the State, and these stipulations, as they appear in the record in this cause, reveal Appel-lee’s Brief, which ordinarily in the usual course of procedure would have been due on November 2, 1956, was by stipulation post-poned until on or before March 20, 1957. These stipulations were all executed at the request of counsel for the State.”
The record in this cause shows that a certified copy of the Assignments of Error were filed in this cause on the 12th day of March, 1957.
In the case of Richardson v. State, 1916, 72 Fla. 154, 72 So. 665, 666, the Florida Supreme Court held in a case with facts very similar to the facts in this case, where appellant had filed Assignments of Error which stated only one ground for appeal but in the appellant’s brief 19 additional assignments were argued, the State had contended that the 19 additional assignments were improperly before the Court and the appellant, at the time of filing her reply brief, had sent up assignments of error to the Supreme Court which included the 19 additional grounds referred to without an order of the court allowing further time to file such assignments, that such assignments would be considered.
The Court, in its opinion, said:
“ * -i* * We call attention to the advisability of a plaintiff in error complying with the statutory requirements in regard to filing the assignment of errors, and if for any reason the same is not filed within the time specified an application should be made to this court for further time. We think that it is advisable to throw out these suggestions, but as it is a criminal case, and the plaintiff has been sentenced to confinement in the state prison at hard labor for a term of 10 years, we shall proceed to discuss such of the assignments argued before us as, we think, merit treatment.”
We are of the opinion that we are justified in following the Florida Supreme Court in Richardson v. State, supra, by considering the assignments of error filed by the defendant.
Judgment of the trial court is affirmed.
KANNER, C. J., and PLEUS, J., concur.