65 So.2d 303 (1953)
SMITH
v.
STATE.
Supreme Court of Florida, Division B.
May 19, 1953.
Johnson & Williams and Baker & Thornal, Orlando, for appellant.
Richard W. Ervin, Atty. Gen., and Bart L. Cohen, Asst. Atty. Gen., for appellee.
DREW, Justice.
James E. Smith, appellant (defendant below), was informed against in the Criminal Court of Record of Orange County for the crime of manslaughter. The first count in the information charged that the defendant "while intoxicated and while under the influence of intoxicating liquor," did unlawfully drive and operate a motor vehicle against and upon Emma Samuels and Frances Karlin, thereby causing their death. The second count charged that the defendant operated said motor vehicle "unlawfully *304 and in a culpably negligent manner," thereby causing the death of the above persons.
The trial resulted in a verdict of acquittal on the first count and a verdict of guilty on the second count, with a recommendation of mercy by the jury. The defendant was adjudged guilty and sentenced to a term of five years in the State Penitentiary. This appeal followed.
The tragic accident, which resulted in the death of Mrs. Samuels and Mrs. Karlin, occurred on a dry, clear night, about 8:30 P.M., on the 13th of February, 1952, on the Cheney Highway (State Road No. 50) just east of the sign marking the east city limits of Orlando and almost directly opposite the office of the Florida Highway Patrol, which was on the south side of the highway. At this point the highway has four lanes and is 42'9" wide between curbs. At the point of the accident the road has a slag surface, the concrete portion of the highway beginning about 500 feet west (toward Orlando) therefrom. It is clear from the evidence, and undisputed, that there were no houses along the highway in the vicinity of and particularly just easterly from the scene of the accident and that it was in a rural area, and that there were no street lights in the vicinity.
The undisputed evidence shows that just shortly before the accident the two ladies who were killed made a telephone call from the office of the Florida Highway Patrol  that they were dressed in dark clothes. They left the office of the Highway Patrol and proceeded to cross the main highway at a point where there was no cross walk or lights. They were travelling in a slightly northwesterly direction or diagonally away from the car being driven by the defendant in a westerly direction toward Orlando. They were struck at a point 9 to 10 feet from the north side of the road or almost in the middle of the defendant's lawful lane of traffic. The defendant testified that, because of being momentarily blinded by an approaching truck, he did not see the two ladies until he was 30 to 60 feet from them and that when he did see them he tried to swerve his car to the left, but struck them with the right front of the car. After the accident defendant's car travelled 279 feet from the point of impact to where his car came to a stop. The defendant testified that he attempted to apply his brakes but in doing so his car seemed to swerve and go out of control, so he had to gradually bring his car to a stop. This is borne out by the fact that the only skid marks (or tire marks) on the highway were from the right front wheel of the car and this extended for a distance of about 200 feet.
Further undisputed evidence shows that after his car came to a stop the defendant walked back to the scene of the accident, saw what had occurred, talked to the officer momentarily, then returned to where his car had come to a stop near the center of the street, backed the car up to the north edge of the road, parked it with the lights on and then walked back to the scene where the officers were. He was then placed in a patrol car, in the custody of the officers, later given a drunkometer test and released on bail. The officers testified that immediately after the accident the defendant told them that the last he remembered before the accident he was going 60 to 65 miles per hour. They testified that the defendant smelled of alcohol and that he was intoxicated and that when he got out of the car he weaved when he walked.
The verdict of not guilty on the first count of the information eliminated the question of manslaughter arising out of the operation of an automobile while "intoxicated". We are, therefore, left with the sole question of whether the facts establish, beyond a reasonable doubt, that the defendant is guilty of manslaughter under the second count  that is  whether the death of Mrs. Samuels and Mrs. Karlin resulted from being struck by the car driven by the defendant in a culpably negligent manner.
"The involuntary killing of a human being is the least heinous of the offenses predicable of homicide." 26 Am.Jur. 166. Under the common law involuntary manslaughter was defined as the unintentional killing of another by a person engaged at the time in doing an unlawful act not *305 amounting to a felony and not likely or naturally to endanger life, or doing a lawful act in an unlawful manner. It negatives the idea of an intention to cause death and in this respect it is different from the great majority of heinous crimes in which the element of intent  express or implied  is usually an essential ingredient. In this State  as in many others  the Legislature has defined involuntary manslaughter. Our statutes define it as (1) the killing of a human being by the act, procurement or culpable negligence of another in cases where such killing shall not be justifiable or excusable homicide or murder, Section 782.07, F.S.A.; or (2) the death of a human being caused by the operation of a motor vehicle by any person while intoxicated. Section 860.01, F.S.A. Both definitions  as at common law  exclude the element of intent and, in one case, substitutes "intoxication" and in another "culpable negligence" therefor.
In Cannon v. State, 91 Fla. 214, 107 So. 360, 363, we discussed the question of "culpable negligence" in a trial for manslaughter and there said:
"* * * But, to authorize the recovery of exemplary or punitive damages, the negligence complained of must be of `a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.' Florida South. R. Co. v. Hirst, 30 Fla. 1, 11 So. 506, 16 L.R.A. 631, 32 Am.St. Rep. 17; Florida East Coast R. Co. v. Hayes, 65 Fla. 1, 3, 60 So. 792; Fitzgerald v. State, 112 Ala. 34, 20 So. 966; Shaw v. State, 88 Fla. 320, 102 So. 550; Florida R. & Nav. Co. v. Webster, 25 Fla. 394, 419, 421, 5 So. 714; Kent v. State, 53 Fla. 51, 43 So. 773. This definition of the character of negligence necessary to be shown to authorize the recovery of punitive damages may well be applied as a definition of `culpable negligence' as used in the statute (section 5039) defining manslaughter. While the kind of negligence required to impose criminal liability has been described in different terms in different jurisdictions, it is uniformly held that it must be of a higher degree than that required to establish simple negligence upon a mere civil issue, and the definition above quoted from former decisions of this court as to the character of negligence authorizing punitive damages appears to be in line with the weight of authority as to the character of negligence necessary to be shown to sustain criminal liability. It stands to reason that the degree of negligence to sustain imposition of imprisonment should at least be as high as that required for imposition of punitive damages in a civil action. * * *" (Emphasis added.)
Measured by the above definition, the facts in this record construed in the light most favorable to the State, do not support the verdict and judgment. The greatest speed testified to was 60 to 65 miles per hour and this on a four lane express highway in a rural area on a dry road and a clear night. Speed alone is not sufficient to sustain a conviction. See Preston v. State, 56 So.2d 543. We have searched the record with care to find something more than speed on which the verdict and judgment might rest, but we fail to find anything. On the contrary, the accident occurred on the side of the highway where defendant had a right to be  in a rural area where there were no street lights and in a location where the defendant had every right to believe pedestrians would not be crossing the highway.
On every highway one sees signs: "Walk facing traffic." In every school children are taught to cross streets only at places used for that purpose. The Court takes judicial knowledge of the fact that it is extremely difficult to see dark objects *306 in the nighttime and it is common knowledge that it is perilous to be on a busy highway at night in dark clothes. This tragic accident would probably never have occurred had the deceased persons observed these fundamental rules for their own safety. See Russ v. State, 140 Fla. 217, 191 So. 296. Surely, the facts do not show that degree of negligence essential to establish criminal liability and warrant imprisonment. To a large extent the defendant was placed in a position, by force of circumstances, which resulted in these tragic deaths. This Court, speaking through Mr. Justice Buford in Austin v. State, 101 Fla. 990, 132 So. 491, 493 (a case involving the death of a child resulting from being struck by an automobile), very aptly said: "* * * we do not think that criminal liability attaches where circumstances and conditions beyond the control of the accused caused him against his will to be in position and under the conditions which resulted in the unfortunate death of the child."
We do not have in this case any of the "other hazards" or "circumstances" mentioned by Mr. Justice Roberts in Preston v. State, supra. There was no question of fog or driving on the wrong side of the road as was present in Lipsey v. State, 154 Fla. 32, 16 So.2d 439; or excessive speed on a curve under an overpass and on the wrong side of the road as in Taylor v. State, Fla., 46 So.2d 725. The record is utterly devoid of that degree of negligence so ably defined in Cannon v. State, supra. Nor is the fact that the defendant was shown to have consumed 2 1/2 to 3 bottles of ale shortly before the accident, an "additional hazard or circumstance" that, taken with other facts, would warrant conviction. The jury had exonerated him of being "intoxicated". That is the degree of drunkenness defined in the manslaughter statute and we hold long ago that "intoxication" and "being under the influence of intoxicating liquors" are different terms and do not mean the same thing. Cannon v. State, supra. It is unlawful to drive a car while "under the influence of intoxicating liquors" but it is not manslaughter if one in such condition runs into and kills another unless "culpable negligence" is shown. We have held that "testimony tending to show that a defendant, charged only with culpable negligence, was under the influence of intoxicants at the time of an automobile collision is admissible, on the theory that a driver so exhilarated is likely to be abnormally reckless." Taylor v. State, Fla., 46 So.2d 725. Such evidence, however, cannot make an act wanton and reckless that was not otherwise so. It is valuable and useful only to corroborate or render more likely, evidence that is doubtful or disputed.
In this connection we might observe the information in this case charged the defendant not only with the operation of the car while "intoxicated" but also "while under the influence of intoxicating liquors." The acquittal of the defendant on the first count renders moot the question of whether the information was faulty, but it is not without merit to argue that such acquittal exonerated the defendant of both degrees of intoxication. In any event, the facts in this record so conclusively establish that the defendant was not guilty of culpable negligence as defined by the law that such evidence could not be considered an "additional hazard or circumstance" that would render an otherwise lawful act unlawful.
We conclude that the motion for new trial made by the defendant, for the reasons herein pointed out, should have been granted.
Reversed and remanded.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.