100 So.2d 839 (1958)
Earnest Leon JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. A-9.
District Court of Appeal of Florida. First District.
February 18, 1958.
Rehearing Denied March 19, 1958.
*840 A.G. Campbell, Jr., De Funiak Springs, for appellant.
Richard W. Ervin and George R. Georgieff, Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant, the defendant at trial, was indicted by a Walton County grand jury and charged with the crime of manslaughter. The indictment was in two counts, the first of which charged defendant with causing the death of one Alto Lee Patterson as a result of culpable negligence in the operation of an automobile; the second charging the same death as a result of defendant's operation of his automobile while intoxicated. At the conclusion of the evidence defendant's motion for a directed verdict as to both counts was denied and the jury found appellant guilty of the offense charged in the first count only, thereby acquitting him of the offense charged in the second count.
On this appeal appellant challenges the sufficiency of the evidence to support the jury's verdict of guilt, and contends that the trial judge erred in giving certain charges to the jury and in refusing to give certain requested charges.
Insofar as it concerns the sufficiency of the evidence, the question to be here determined is whether the acts of the defendant, as shown by evidence which the jury had the right to believe, when considered separately or in combination, constituted what in law has been termed culpable negligence. That is, that degree of negligence "of `a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences or such wantonness or recklessness, or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them.'"[1] This definition has been consistently adhered to by our Supreme Court.[2] It does not follow, however, that every fatality, regrettable as it may be, is accompanied by and results from conduct warranting a criminal conviction. That the occurrence of a collision carries with it the presumption of negligence in some degree on the part of someone is not necessarily legally sufficient to warrant a conviction for manslaughter predicated upon culpable negligence.[3] Before one can be so condemned it must be established beyond and to the exclusion of every reasonable doubt[4] that the defendant has been guilty of negligence of the character heretofore defined.[5] *841 The words "culpable negligence" as used in F.S., Sec. 782.07, F.S.A., and therefore such as is necessary to sustain a conviction of manslaughter, mean more than such simple negligence as would authorize recovery of compensatory damages in a civil action.[6]
In the instant case, the unfortunate death of Alto Lee Patterson resulted from a collision which occurred at about 6:10 P.M. on January 29, 1956, between a car driven by the defendant and a pick-up truck driven by one Coleman. From the evidence it appears there were no visual obstructions other than those normally attending the dusk and early dark of a winter's evening. Defendant was proceeding in the direction of Florala, Alabama, and was attempting to negotiate a curve in the road at a point some 200 feet before reaching a store owned and operated by the deceased Patterson, when he side-swiped the pick-up truck driven by Coleman. As a result of this collision the hood of defendant's car became unlatched and flew up and back, thus obscuring his forward vision. Defendant lost control of his car and it proceeded across the road and onto the lefthand shoulder, thence onto the deceased's premises, and crashed into the store building located thereon just as Patterson was closing for the night. There is a complete absence of any positive evidence as to where or how the defendant's car struck Patterson, but when the first witness arrived on the scene his body was found lying across the engine in an unconscious condition. Death ensued before he regained consciousness and before medical aid could be administered.
Defendant's guilt must be established, if at all, from the evidence of events leading to and culminating in the collision between the vehicles. This is true for the reason that defendant's forward vision from and control over his vehicle, without contradiction, ceased at the instant of impact. The principle is well established in this jurisdiction that criminal liability does not attach when the accused is by circumstances and conditions beyond his control and against his will, placed in the position and subjected to the conditions which resulted in the death with which he is charged.[7]
The evidence concerning defendant's condition of sobriety and the manner in which he was operating his automobile immediately before and at the time of the collision with Coleman's truck is in sharp conflict. Defendant testified, inter alia, that he had been traveling at approximately 60 miles per hour and had slowed down to some extent upon approaching the curve on which the collision occurred; that he was blinded by the lights on Coleman's vehicle; and that it appeared to him Coleman's truck was on the wrong side of the road. He admitted participating in a "drinking" party the previous night and that he had consumed two beers around 9:30 A.M. on the day of the collision. The only eyewitness not directly involved in the mishap testified that both vehicles were proceeding at approximately 40 miles per hour and appeared to collide at the center of the road. Coleman's testimony indicates that defendant was traveling at approximately 60 miles per hour and on the wrong side of the road. According to Coleman, three wheels of his truck were on his righthand shoulder of the road at the instant of impact. This evidence was corroborated generally by Coleman's wife who was riding in the truck with him. Of the five state's witnesses who testified as to defendant's condition of sobriety, three observed no indication of alcoholic influence; *842 one was of the opinion that defendant had been drinking, but was "naturally groggy and suffering from shock"; and one "smelled" alcohol when taking defendant to jail some two hours after the accident and after his wounds had been cleaned and treated with alcohol.
When viewed in a light most favorable to the State's position, the only credible evidence tending to establish culpable negligence may be summarized as proving that at the time of the initial collision defendant was (1) travelling at approximately 60 miles per hour; (2) under the influence of alcohol at least to some degree; and (3) across the center line on the wrong side of the road.
With reference to the speed of defendant's vehicle, the evidence shows the incident occurred at dusk or early dark on an open, dry county road and at a time when the weather was clear. There is no evidence tending to establish the nature of traffic conditions or other hazards at or around the scene, and no evidence from which it could be concluded that they were such that one driving an automobile 60 miles per hour would thereby evince culpable negligence.
Speed alone is not necessarily such culpable negligence as to sustain a charge of manslaughter.[8] Likewise, that defendant "had been drinking" or was to some degree under the influence is not proof of culpable negligence. Such evidence is admissible only upon the theory that persons under the influence of alcohol to any considerable degree, though not actually intoxicated, are more apt to be heedless, reckless and daring than when free from such influence; and, standing alone, cannot make an act wanton and reckless that would not otherwise be so.[9] Furthermore, defendant's act of crossing over onto the wrong side of the road in attempting to negotiate a curve, while it may have constituted negligence sufficient to sustain civil liability  a point not here decided  falls far short of culpable negligence,[10] as construed by our Supreme Court in cases arising under the manslaughter statute. In the case of Maxey v. State[11] the defendant, who was driving at a fast rate of speed and smelled of alcohol, while traversing a curve, lost control of his car, which crossed to the lefthand shoulder of the road where it skidded some 300 feet, turned slightly and skidded an additional 150 feet, and turned over three times, killing a passenger. He was acquitted of manslaughter by reason of intoxication but convicted of manslaughter by culpable negligence. In reversing, our Supreme Court stated, through Mr. Justice Drew, that "The testimony in this case, taken in a light most favorable to the State, is neither consistent with guilt nor inconsistent with innocence. Liberty is too precious a possession to be taken away on evidence which does not measure up to the requirements laid down by the law for conviction."
In Preston v. State[12] the defendant was convicted of manslaughter resulting from culpable negligence in causing the death of a person in another car with which he collided at a city street intersection. Defendant was travelling 50 miles per hour in a 25 mile speed zone. In reversing, our Supreme Court alluded to the absence of evidence relating to "traffic conditions or other hazards that would be relevant to the question of whether appellant's excessive speed was such as to constitute `culpable negligence'." A conviction of manslaughter through culpable negligence was reversed in Smith v. State[13] *843 although there was evidence showing defendant was driving 60 to 65 miles per hour at 8:30 P.M., smelled of alcohol, and weaved when he walked. From the foregoing it becomes obvious that defendant in the instant case was not shown to have been guilty of that high degree of negligence such as to warrant conviction for manslaughter. As deplorable as this mishap was, we are convinced that there is no substantial evidence in the record upon which a jury's verdict of guilty could be predicated. This being so, the defendant's motion for directed verdict at the conclusion of the evidence should have been granted and the trial court's failure to do so was error. For the foregoing reasons the judgment appealed from is reversed and the cause remanded.
O'CONNELL, STEPHEN C., A.J., concurs.
STURGIS, C.J., dissenting.
STURGIS, Chief Judge (dissenting).
Not questioning the bona fides of the instant appeal, and recognizing the elemental character of my observations, I think it is well to be often reminded that if the right of appeal is to be preserved in good health for the aid and comfort of those as to whom justice is denied or perverted, it is essential that appellate courts guard against the inroads of those who engage the right capriciously, or employ it to delay or defeat justice. It is on this footing that we indulge a strong presumption that the action in the court below was regular in all respects and cast on appellant the burden of establishing that it was not in compliance with the essential requirements of law and that he was prejudiced thereby.
Our system of government has no stronger concept than that which requires the guilt or innocence of one charged with crime to be determined by a jury of his peers. The vigor of this institution rests on the credence given and finality of its findings as traditionally established and sustained by courts of appeal, and by trial courts as well. The reluctance of appellate courts to disturb the verdict of a jury has many logical and practical considerations to support it. Not having been audience to the trial, we have before us only the cold record and the presentation by counsel. These are little more than a shadow of the vibrant human equations with which the jury and trial judge were intimately conversant. Among other deficiencies, they cannot capture, stencil, or recreate the atmosphere and living drama of the courtroom scene. They cannot sound again the nuances of the spoken word, picture the demeanor of the actors, reflect the candor or lack of candor of the witnesses, measure their intelligence or make proper allowance for those having physical infirmities. Yet it is upon these and other factors, denied to us, that the jury's verdict depends; factors that necessarily govern in the performance of its exclusive function to interpret, weigh, and evaluate the evidence in the light of the applicable law.
The right to trial by jury in the case on appeal meant that this appellant, as a member of the body politic, vested the jury with power to decide the facts upon the issue of culpable negligence. Its deliberations involved, of course, the esoteric differences between the varying degrees of negligence, as to which the bench and bar is far from being in accord, but the salutary fact is that the American jury usually finds a correct verdict, the intricacies of the law notwithstanding. We have no right to pit our judgment against that of the jury.
Upon carefully reviewing the record and briefs, and testing this appeal by the foregoing considerations, it is my belief that it is not made to appear that the trial court departed from the essential requirements of the law. There is ample testimony, though conflicting, from which the jury would have been warranted in concluding  and it must be presumed that it did conclude  that at the time of the accident *844 appellant was driving at an excessive rate of speed, that he was driving on the wrong side of the road, and that he was to some extent under the influence of an intoxicating beverage, though not necessarily intoxicated. Excessive speed alone may under some circumstances be culpable negligence sufficient to sustain conviction of manslaughter and the same may be true of the act of preempting another's lane of travel on the highway. This court is not in position to say that both of these factors, which were before the jury in the case on appeal, coupled with the other facts and circumstances, were insufficient as a matter of law to support the verdict.
The practice is quite common in prosecutions of manslaughter that will involve evidence to the effect that the party charged was either intoxicated or under the influence of intoxicants, to bring the indictment or information in two counts, one on the theory of intoxication and the other on that of culpable negligence. Where acquittal results on the intoxication count, which to convict requires a showing of complete intoxication or drunkenness at the time of the accident, there appears to remain, in spite of the decisions, confusion as to the propriety of evidence relating to the use of intoxicants as having a bearing on the count charging culpable negligence. A verdict of not guilty as to the count based on intoxication has no implication whatever as to the issue presented by the count based on culpable negligence. In the former intoxication is the gist and gravamen of the offense. In the latter, the use of intoxicants is simply one of the elements of proof which may have value on the question of the likelihood that the accused was reckless to the degree of culpable negligence, the admission of such evidence being postulated on the theory that one who is under the influence of an intoxicant, though not necessarily intoxicated, has a propensity to act in a more reckless manner than he would normally act in the absence of such use. For a treatise on the general subject see 4 U.Fla.L.Rev. 360 (Fall 1951). See also Porter v. State, Fla., 88 So.2d 924; Hunt v. State, Fla., 87 So.2d 584; Hopper v. State, Fla., 54 So.2d 165; Taylor v. State, Fla., 46 So.2d 725; Touchton v. State, 154 Fla. 547, 18 So.2d 752; Roddenberry v. State, 152 Fla. 197, 11 So.2d 582, appeal dismissed 317 U.S. 600, 63 S.Ct. 266, 87 L.Ed. 490, rehearing denied 317 U.S. 713, 63 S.Ct. 440, 87 L.Ed. 568; Stephens v. State, 140 Fla. 163, 191 So. 294; Cannon v. State, 91 Fla. 214, 107 So. 360.
For the reasons stated, I must respectfully dissent from the conclusions reached in the controlling opinion. I would affirm the conviction.
NOTES
[1] Cannon v. State, 91 Fla. 214, 107 So. 360, 363.
[2] Hunt v. State, Fla. 1956, 87 So.2d 584; Franklin v. State, 120 Fla. 686, 163 So. 55.
[3] Stephens v. State, 140 Fla. 163, 191 So. 294.
[4] Williams v. State, Fla. 1951, 54 So.2d 66.
[5] See Miller v. State, Fla. 1954, 75 So.2d 312, 314, wherein the Supreme Court, speaking through Mr. Justice Drew, stated: "Decisions arising under our guest statute must necessarily be relevant to cases in which there is prosecution for manslaughter for the operation of an automobile * * * because there can be no doubt that the culpable conduct to sustain imprisonment must be of a kind sufficient at least to sustain an action for civil liability under our guest statute." And, the case of O'Reilly v. Sattler, 141 Fla. 770, 193 So. 817, 818, in which the Supreme Court, through Mr. Justice Terrell, held that verdicts under our guest statute "* * * must be supported by conclusive proof of gross negligence before [such] a verdict will be permitted to stand." (Emphasis supplied.)
[6] Franklin v. State, supra, note 2.
[7] Austin v. State, 101 Fla. 990, 132 So. 491.
[8] Preston v. State, Fla., 56 So.2d 543.
[9] Smith v. State, Fla. 1953, 65 So.2d 303; Clowney v. State, Fla.App. 1957, 97 So.2d 316; Fowlkes v. State, Fla.App. 1957, 100 So.2d 826.
[10] Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 131 A.L.R. 886.
[11] Maxey v. State, Fla. 1953, 64 So.2d 677, 678.
[12] Preston v. State, Fla., supra, note 8.
[13] Smith v. State, supra, note 9.