329 So.2d 349 (1976)
Norman A. MURRAY, Appellant,
v.
STATE of Florida, Appellee.
No. 75-961.
District Court of Appeal of Florida, Fourth District.
April 2, 1976.
Warner S. Olds, Public Defender 17th Judicial Circuit by Stuart Mark Lerner and Neil G. Frank, Asst. Public Defenders, Fort Lauderdale, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee by Basil S. Diamond, Asst. Atty. Gen., for appellee.
*350 RUDNICK, VAUGHN, J., Associate Judge.
Norman Abelino Murray was informed against in a one count Information charging him with Manslaughter arising out of the operation of a motor vehicle in a careless, reckless or culpably negligent manner contrary to Florida Statute 782.07. Upon the jury returning a verdict of guilty and the Court pronouncing judgment and sentence this appeal followed.
Although several matters have been assigned as error, this Court addresses itself to the assignment of error which questions the sufficiency of the evidence to support the verdict rendered by the jury. A careful review of the entire record below when compared to the standards and law set forth by the Florida Supreme Court in the case of Maxey v. State, 64 So.2d 677 (1953), clearly reflects the verdict must be set aside.
Unique to the presentation of this case to the jury was the number of lay witnesses who witnessed the accident which resulted in the tragic death of a human being. The witnesses were able to describe to the jury in detail those events immediately preceding the accident, the accident itself and the events occurring immediately after the accident. Law enforcement officers also responded to the accident within minutes of the occurrence. The scene of the accident is I-95 in Broward County which is a six lane highway; three traffic lanes proceeding in a southerly direction separated by a median strip and three traffic lanes proceeding in a northerly direction. The weather was clear and dry, the road was straight, traffic conditions for the area were normal, the speed limit is 65 miles per hour and the hour is approximately 1:30 in the afternoon. Adjacent to the outside lane of traffic is a shoulder of sufficient width that a motor vehicle can leave outside lane of traffic completely and stop and to the outside of the shoulder is a guard rail. It was on this shoulder to the lanes of traffic traveling in a northerly direction the victim's paneled truck was parked because of a flat tire. The appellant, Norman Abelino Murray, was operating a semi tractor/trailer in a northerly direction on I-95 and his vehicle occupied the middle lane. In an effort to pass the small car in front of him the appellant moved partially into the inner lane. Unable to pass the vehicle he returned to the middle lane, commenced negotiating his pass in the outer lane and after three or four attempts at passing the vehicle in question his attempts resulted in failure.
All witnesses agree that appellant's vehicle as well as all other vehicles were traveling approximately forty-six to fifty miles per hour. The appellant's vehicle suddenly veered from the middle lane to the right at an angle ranging from fifteen to forty-five degrees, struck the guard rail perhaps as close as five feet in front of the paneled truck sitting on the shoulder, rammed into the rear of the paneled truck in which the victim was sitting and then both vehicles skidded down the rail across the three paved lanes of traffic, across the median strip, across the three lanes of traffic traveling in a southerly direction, struck the guard rail wherein the paneled truck burst into flames which ended in the victim's death.
A witness, Miss Segal, traveling south on I-95 saw the semi tractor/trailer actually hit the paneled truck and cross the median. A witness, Otto D. Grove, Jr., was driving north on I-95 about two or three hundred feet behind the appellant's truck saw all the movements with the exception that he could not see the small car the appellant was attempting to pass.
At the scene of the accident the appellant was assisted by a witness, Teovaldo Rodriguez, and together they attempted without success to put the fire out. The witness testified during the fifteen or twenty minute period of time he was with the appellant they talked to each other and the appellant's speech was not slurred nor did he have any difficulty understanding *351 appellant's words, nor did the appellant have any difficulty understanding the witness' words. The appellant did not have any difficulty standing or walking, his face did not seem unusual or flushed, there was nothing unusual about his eyes and appellant was not intoxicated.
Florida Highway Patrol Trooper, Kenneth Stockdale, who is an accident investigator in Broward County with special training in accident investigation, arrived on the scene very shortly after the accident. The vehicles were still engulfed in flames and he immediately realized a death was involved in the accident. The trooper investigated the scene, recalls talking to Mr. Rodriguez and other witnesses including appellant and ultimately he arrested appellant for "violation of right-of-way, no tag on the trailer." The trooper testified he could smell the odor of alcohol on appellant but he could not recall anything concerning the facial characteristics of appellant. He observed the appellant walking but could not recollect anything unusual. The appellant did not have any difficulty standing or walking. He could recall nothing particular about appellant's eyes, although on an earlier deposition he did testify they were a little bloodshot.
Trooper P.L. Swartz testified he drove appellant from the accident scene to the Florida Highway Patrol Station in Fort Lauderdale for the purpose of administering a breathalyzer test which was administered at approximately 2:30 in the afternoon on the day in question and the reading was .13 at that time.
The appellant testified he was a professional truck driver hired to haul a load and at lunch he had a ham and cheese sandwich, a couple bags of potato chips and three beers and approximately ten minutes later he was involved in the accident. He further testified relating to his attempts to pass the small car three or four times and his truck suddenly veered to the right crashing into the guard rail. He attempted without success to apply his brakes and he did his best to keep the truck under control.
The Supreme Court of Florida has enunciated the law as follows:
"It is unlawful to drive a car while `under the influence of intoxicating liquors' but it is not manslaughter if one in such condition runs into and kills another unless `culpable negligence' is shown. We have held that `testimony tending to show that a defendant, charged only with culpable negligence, was under the influence of intoxicants at the time of an automobile collision is admissible, on the theory that a driver so exhilarated is likely to be abnormally reckless' ... Such evidence, however, cannot make an act wanton and reckless that was not otherwise so. It is valuable and useful only to corroborate or render more likely, evidence that is doubtful or disputed." Smith v. State, 65 So.2d 303 (1953). See also Maxey v. State, 64 So.2d 677 (1953) and Jackson v. State, 100 So.2d 839 (Fla.App.1st D.C.A. 1958)
In each of the above cases jury verdicts of guilty relating to vehicular manslaughter because of culpable negligence was reversed and in each case there was evidence the defendant had been drinking. Indeed, the Florida Supreme Court, in the Smith case, supra, reached the same conclusion even though the officers at trial testified the defendant smelled of alcohol, that he was intoxicated and that when he got out of the car he weaved when he walked.
The Appellate Court must be ever mindful and reluctant to interfere with a jury's verdict, however, when one considers the facts presented to the jury and compares them the law as enunciated by the Supreme Court of the State of Florida in the foregoing citations, it is clear the judgment below must be reversed and a new trial ordered.
*352 The Court has considered the other assignments of error raised by appellant and finds no error in the lower court's rulings.
REVERSED AND REMANDED.
WALDEN, C.J., and MAGER, J., concur.