688 So.2d 338 (1996)
Curtis Blain DAVISON, Appellant,
v.
STATE of Florida, Appellee.
No. 95-2460.
District Court of Appeal of Florida, First District.
December 12, 1996.
Rehearing Denied March 19, 1997.
*339 Nancy A. Daniels, Public Defender; Phil Patterson, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Carolyn J. Mosley, Assistant Attorney General, Tallahassee, for Appellee.
LAWRENCE, Judge.
We have for review on direct appeal the judgment and sentence imposed upon Curtis Blain Davison (Davison) which arose from an automobile accident occurring on November 28, 1994, in Leon County. Davison was convicted of manslaughter by culpable negligence, perjury not in an official proceeding, and making a false report regarding a traffic incident, following a jury trial. We affirm.
The evidence presented at trial established that on the night of the accident, Davison had consumed three alcoholic beverages (vodka) at the Steak and Ale where he was the manager. He had worked all day, reporting at 9 a.m. During the evening hours, the regional manager, Michael Mannella, was also with Davison and consumed alcoholic beverages. They left Steak and Ale around 11:30 p.m. and went to Julie's Place where Davison consumed one beer and one mixed drink. Mannella and Davison left Julie's Place about 12:30 a.m., driving Mannella's Nissan 300 ZX. Mannella checked into a motel and he and Davison thereafter rode around Tallahassee for some time. Mannella was a stranger to the city and wanted to see different parts of Tallahassee. They eventually wound up on Meridian Road, north of Interstate 10, an area with which Davison was unfamiliar. A terrific crash, involving only the Nissan 300 ZX, subsequently occurred about 1:45 a.m. on Meridian Road near Summerbrooke Drive, resulting in the death of Mannella. Davison told investigating officers that Mannella was driving in a northerly direction at the time of the crash, traveling at a speed of between 80 and 100 miles per hour; that they came to a sign warning of an S-curve, but were unable to completely negotiate the curve before the car began sliding off the road and into a tree.
The physical evidence at the accident scene overwhelmingly refuted Davison's claim that Mannella was the driver, and convincingly supported the State's position that Davison was the driver. Davison does not seriously contend to the contrary on appeal, but argues that the evidence was insufficient to sustain the conviction for manslaughter.
Expert witnesses called by the State established the speed of the car immediately before the Nissan left the road at between 89 and 94 miles per hour. A toxicologist opined that Davison's blood alcohol level at the time of the accident was between .063 and .089 grams per 100 milliliters.
Other evidence at the scene consisted of the following conditions. The section of Meridian Road immediately preceding the crash site consisted of a two-lane county road lined on each side by numerous trees sometimes *340 referred to as a canopy road. The road was dark and had no street lights. Immediately south of the crash site there is an S-curve in the road. A sign warns of the S-curve and the posted speed limit was 45 miles per hour. There was also a cautionary speed limit sign advising 35 miles per hour. The Nissan went through the S-curve before sliding off of the road. After leaving the road, the car hit a tree, became airborne, rotated to a backwards position, and hit a larger tree which caused extensive damage to the car, particularly the passenger side door.
Among his several arguments, Davison contends that excessive speed, coupled with evidence of alcohol consumption, is not sufficient to constitute manslaughter by culpable negligence under Florida's statute, citing Filmon v. State, 336 So.2d 586 (Fla.1976), and numerous other cases.
In Filmon, our supreme court said: "every case of manslaughter by culpable negligence must be determined upon the facts and circumstances peculiar to that case." Filmon v. State, 336 So.2d at 590.
In the instant case, we have in addition to evidence of consumption of alcohol and excessive speed by Davison, the following facts and circumstances:
(1) the accident occurred at night in total darkness with no street lights or other sources of illumination;
(2) the accident occurred on a two-lane county road, lined with trees on both sides, described as a canopy road;
(3) the road signs warned of an S-curve with a posted speed limit of 45 miles per hour and a cautionary advisory speed of 35 miles per hour;
(4) Davison was driving the car on a road with which he was unfamiliar;
(5) Davison was driving a high-performance sports car with which he was unfamiliar;
(6) Davison drove through the S-curve at a high rate of speed, and immediately before sliding off of the road, was traveling between 89 and 94 miles per hour;
(7) Davison had worked long hours at his job before the accident, having reported for work more than sixteen hours earlier at 9:00 a.m.;
(8) Davison ignored all of the warning signs and conditions which should have alerted him to the inevitable crash which subsequently resulted in Mannella's death.
These facts and circumstances are more than ample to warrant the jury's verdict of manslaughter by culpable negligence and we find the evidence sufficient to sustain the conviction for that offense. No issue is made with respect to the remaining two offenses.
Accordingly, we AFFIRM the judgment and sentence of the trial court for each of the offenses.
MINER, J., concurs.
SHIVERS, Senior Judge, dissents with opinion.
SHIVERS, Senior Judge, dissenting.
Simple negligence, however grave the consequences thereof, cannot support a conviction of manslaughter by culpable negligence. Because I believe today's decision allows the conviction to stand on a showing of a traffic death resulting from speed in excess of the posted limit, an insufficient basis as a matter of law, I respectfully dissent.
Viewing the evidence and all reasonable inferences in favor of the state, as must be done in cases such as this, the facts presented at trial indicate that on the ill-fated evening, the Appellant met with Mannella at a Steak and Ale restaurant. The Appellant was the manager of the restaurant location and Mannella was the regional manager for the restaurant chain. Between 8:00 and 10:30 p.m. the Appellant was served three and Mannella was served four mixed drinks. At some point in the evening, the Appellant and Mannella left Steak and Ale and traveled to another restaurant nearby where they each were served one beer and one mixed drink. The two left that restaurant at about 12:30 a.m. in Mannella's automobile, a 1993 Nissan 300 ZX.
Although there was no eyewitness, the car and accident scene showed evidence of a spectacular crash. It appears that the Appellant and Mannella were traveling north on *341 Meridian Road at between 89 and 94 miles per hour with the Appellant at the wheel.[1] Negotiating a curve with a posted speed limit of 35 miles per hour, the Appellant lost control of the vehicle. Leaving the roadway, the car struck a tree and, spinning now, struck another tree with the passenger side of the car. This second impact compromised the structure of the car and stripped open the passenger door as the car became airborne. Apparently not wearing his seatbelt, Mannella was ejected from the car before it finally came to rest in the roadway, and suffered mortal injuries in the process.
On these facts, the state chose to prosecute the Appellant for manslaughter by culpable negligence under section 782.07, Florida Statutes, which imposes a greater showing than that required under the vehicular homicide statute, section 782.071, Florida Statutes (1993). See Behn v. State, 621 So.2d 534, 536 (Fla. 1st DCA 1993). The state's evidentiary burden under this statute is well-settled. The degree of negligence necessary to constitute criminal liability under section 782.07 must be of a
gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them.
Preston v. State, 56 So.2d 543, 544 (Fla.1952); quoting Savage v. State, 152 Fla. 367, 11 So.2d 778, 779 (Fla.1943); see also Cannon v. State, 91 Fla. 214, 107 So. 360, 363 (Fla.1926) and cases cited therein. Further, where the conviction rests on circumstantial evidence only,
the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused ... committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent with, guilt; they must be inconsistent with innocence.
Cannon, 107 So. at 363. On my review of the record in light of the standards established by the supreme court, I am not convinced that the evidence presented is "so strong, cogent, and convincing as to exclude every reasonable hypothesis except that of the defendant's guilt." See Savage, 11 So.2d at 782 and cases cited therein.
The supreme court has already settled much of the inquiry this court is called upon to make in this appeal. "It cannot be controverted... that excessive speed alone, ..., coupled with evidence of intoxication, is not sufficient to constitute culpable negligence under our criminal statute." Filmon v. State, 336 So.2d 586, 590 (Fla.1976), cert. denied, Filmon v. Florida, 430 U.S. 980, 97 S.Ct. 1675, 52 L.Ed.2d 375 (1977), rehearing denied, 431 U.S. 960, 97 S.Ct. 2689, 53 L.Ed.2d 279 (1977); see also McCreary v. State, 371 So.2d 1024 (Fla.1979). The district courts of appeal have aptly followed the supreme court's directions concerning the relevance of evidence of alcohol consumption in prosecutions of manslaughter by culpable negligence. See Peel v. State, 291 So.2d 226, 228 (Fla. 1st DCA 1974); Chieves v. State, 328 So.2d 264 (Fla. 1st DCA), cert. denied, State v. Chieves, 336 So.2d 108 (Fla.1976); Brown v. State, 511 So.2d 1116 (Fla. 2d DCA 1987); R.C.G. v. State, 362 So.2d 166 (Fla. 2d DCA 1978); Murray v. State, 329 So.2d 349 (Fla. 4th DCA 1976)(conviction reversed even though record indicated .13 blood alcohol content); Norstrom v. State, 587 So.2d 1148 (Fla. 4th DCA 1991), quashed in part on other grounds, State v. Norstrom, 613 So.2d 437 (Fla.1993); see also Woodward v. State, 274 So.2d 246 (Fla. 1st DCA 1973); Lemming v. State, 159 So.2d 486 (Fla. 2d DCA *342 1964). Therefore, if the conviction should stand, it must do so by reference to evidence beyond the Appellant's alcohol consumption and speed in excess of the posted limit. As the state offered no eyewitness to the tragedy, the evidence presented must meet the standard of the circumstantial evidence rule. Savage, 11 So.2d at 781-82.
As an initial matter, however, this record does not establish "excessive speed" as that term has been applied in relation to the standard for conviction of this offense. Exceeding the posted speed limit does not of itself constitute "excessive speed" such as to establish "culpable negligence." Preston, 56 So.2d at 544; cf. Filmon, 336 So.2d at 590 with Brown, 511 So.2d at 1117 (absent distractions, obstructions or adverse weather condition speed in excess of the posted speed limit would not be "excessive" but for the lower speed limit). There is no question concerning evidence of speed in excess of the posted limit in this case. Nonetheless, in order to support its theory of the case that the accident occurred on an "inherently dangerous road," the state has disclaimed all "other circumstances" that would establish "excessive speed" constituting culpable negligence. At oral argument, counsel for the state asserted that weather and traffic conditions "are important only if ... you're dealing with a road that's not inherently dangerous." "[L]osing control of the vehicle because you're going too fast," constitutes culpable negligence, "whatever the conditions are."
The state's position is mistaken. Broadly stated, driving in excess of the posted speed limit is certainly negligent. Culpable negligence is not shown, however, absent other circumstances showing a reckless disregard of consequences and indifference to the rights of others. Preston, 56 So.2d at 544, citing People v. Gardner, 255 A.D. 683, 8 N.Y.S.2d 917, 921 (N.Y.A.D.1939); see also Henderson v. State, 90 So.2d 447, 448 (Fla. 1956); Jackson v. State, 100 So.2d 839, 842 (Fla. 1st DCA 1958); Fowlkes v. State, 100 So.2d 826 (Fla. 3rd DCA), cert. denied, 101 So.2d 819 (Fla.1958) (although defendant "blacked out" from drink, causing the death of another driver, evidence was inconclusive in absence of evidence of other circumstances that might shed light on pertinent aspects of the accident). The record indicates that the accident occurred under a clear sky, that there was no fog present, that the road was dry, and that there was no other traffic on the road at the time and place of the accident.[2] Since the state has disclaimed all "other circumstances" except speed in excess of the posted limit, culpable negligence cannot be shown.
In light of the state's disavowal of other circumstances beyond exceeding the legal speed limit, the evidence of alcohol consumption is of questionable value. Ordinarily, evidence of alcohol consumption "is valuable and useful only to corroborate or render more likely, evidence that is doubtful or disputed." Smith v. State, 65 So.2d 303, 306 (Fla.1953).
[T]hat the defendant "had been drinking" or was to some degree under the influence is not proof of culpable negligence. Such evidence is admissible only upon the theory that persons under the influence of alcohol to any considerable degree, though not actually intoxicated, are more apt to be heedless, reckless and daring than when free from such influence; and, when standing alone, cannot make an act wanton and reckless that would not otherwise be so.
Jackson, 100 So.2d at 842; see also Smith, 65 So.2d at 306; Peel, 291 So.2d at 228. Here again, since the state has disclaimed the "other circumstances" necessary to prove "excessive speed" as an element of culpable negligence, the evidence of alcohol consumption "could not be considered an `additional hazard or circumstance' that would render an otherwise lawful act unlawful." Smith, 65 So.2d at 306.
Moreover, the evidence of intoxication is not conclusive. I do not question the testimony of the restaurant and bar employees *343 who served drinks to the Appellant and Mannella. But the witnesses who observed the Appellant both before and following the accident testified that they detected no smell of alcohol or that the Appellant did not appear to be intoxicated. Gina Cicco, the waitress who served the Appellant and Mannella at the second restaurant and who knew the Appellant, having previously worked for him at Steak and Ale, testified that he did not appear to be intoxicated. Richard Ramsey, who lived near the accident scene and was the first to see the Appellant following the accident, testified that, although sounding distressed, his speech was clear and that he did not otherwise appear to be intoxicated. Officer Brinson, the first police officer to arrive on the scene, testified that the Appellant's speech was clear. Officer Brinson testified further that she detected the smell of alcohol at the scene but was unable to determine its source. Officer Jones, who arrived just after Officer Brinson, smelled alcohol around Mannella but not around the Appellant. Officer Jones also clearly understood the Appellant's speech. Officer Randolph, the third police officer at the scene, testified that the Appellant's speech was soft but clear. Officer Randolph too smelled alcohol at the scene but was unable to determine whether it came from the Appellant. The emergency room nurse who treated the Appellant testified that his speech was clear. Finally, when tested at 3:37 a.m., the Appellant's blood alcohol level was .04 grams per milliliter. A toxicologist from the Florida Department of Law Enforcement crime lab estimated that, on the basis of the alcohol content when tested, the Appellant's blood alcohol level between 1:30 and 1:45 would have been somewhere in the range of .063 and .089 grams per milliliter.
Since the state chose not to charge the Appellant with an alcohol related offense, the record presents no express finding by the jury as to any of this evidence. Cf. Filmon, 336 So.2d 586; Peel, 291 So.2d 226; see also Murray, 329 So.2d at 351 and cases cited therein. Thus, while the jury certainly could reasonably have inferred that the Appellant was under the influence of alcohol to some degree, the record presents inconclusive proof of the Appellant's intoxication and evidence of questionable probative value of his consumption of alcohol given the absence of any uncertain or disputed facts. Smith, 65 So.2d at 306. The supreme court has before noted the significance of such evidence to the issue presented. Preston, 56 So.2d at 544. Where criminal liability is at stake, inconclusive evidence does not serve the ends of justice. Id.
In disclaiming other circumstances pertinent to the question of culpable negligence, the state urges that driving an unfamiliar vehicle on an unfamiliar roadway constitutes culpable negligence. Here again, the state's position is mistaken. The lack of familiarity upon which the state would support the conviction is rather more consistent with innocence than with culpability. In Henderson, 90 So.2d 447, the supreme court affirmed a conviction of manslaughter by culpable negligence. In that case, however, the court observed that the accused knew the roadway to be dangerous; he knew the particular curve upon which the accident occurred, he knew that the curve was dangerous because he had traveled it before, and he knew that he could not hold the road at the speed that he was traveling at the time of the accident, between 80 and 100 miles per hour, because he had attempted to negotiate the curve before at 60 miles per hour. 90 So.2d at 449. The court found in Henderson that "high speed accompanied by knowledge of the dangerous curve plus an obvious failure to exercise the slightest care for the safety of the passengers" was sufficient to take the case to the jury. Id. (emphasis supplied); see also Hunt v. State, 87 So.2d 584, 585 (Fla.1956) (being conversant with the roadway upon which the accident occurs contributes to the recklessness element of manslaughter); State v. Redden, 269 So.2d 415, 417 (Fla. 2d DCA 1972) (culpability based on the defendant's knowledge of the presence of children in the neighborhood). If, in Henderson, speed of between 80 to 100 miles per hour were itself sufficient to support the conviction, knowledge of the roadway would not have been relevant to the inquiry. If knowledge of the roadway establishes culpability, lack of knowledge militates against it. In this case, the record fails to indicate that the Appellant was familiar with *344 the road so as to be culpably negligent in failing to exercise appropriate care in light of any known dangers.[3] Moreover, the state has affirmatively asserted the Appellant's unfamiliarity as evidence of his culpability. The state's position is not supportable as a matter of law.
At oral argument for the first time in this case, the state presented the theory that the accident occurred on an "inherently dangerous road." Counsel for the state failed to cite any authority for its position or to direct the court to any record evidence describing the roadway on which the accident occurred as "inherently dangerous." Repeatedly referring to the inherent danger of the road as the single distinguishing factor in this case, counsel for the state explained the term thus:
What can make a road inherently dangerous is if the weather conditionsyou could have rain, fogor if, or you could be heavilylots of traffic, if it's heavily-traveled, then that road then becomes inherently dangerous because the driver's got to negotiate around all those other vehicles or obstacles on the road where you have a wreck.
The state distinguishes this case from all other case law on the subject in that none other involved an "inherently dangerous road." The centrality of this concept to the state's position cannot be mistaken. In response to Judge Miner's question, counsel for the state acknowledged that it pinned its case on the fact that the road was inherently dangerous.
Again, I believe that the supreme court has addressed and rejected as a failure of proof the very position the state seeks to advance as a matter of law.
While the operation of the automobile at the time and place and under the circumstances enumerated may be reckless indifference to the rights of others or such wantonness or recklessness or gross careless disregard of the safety and welfare of the public, it has not by the testimony appearing in this record been made so to appear.
Savage, 11 So.2d at 782. As in Savage, this court may not assume, in the absence of any testimony or other evidence, that the roadway upon which this accident occurred was so dangerous that the Appellant's speed in excess of the posted limit alone established culpable negligence. This is especially so given the state's argument that exceeding the posted limit on a roadway with no apparent hazards and in the absence of "other circumstances" will not result in a loss of vehicular control.[4] The state's position is contradicted by precedential authority and unsupported by the record.
The state improperly argues from the result. "Criminal responsibility for manslaughter should be determined by considering the act that resulted in the death from all of the surrounding circumstances, and not from considering the result alone." Penton v. State, 548 So.2d 273, 275 (Fla. 1st DCA 1989) (emphasis in the original) citing Tipton v. State, 97 So.2d 277, 281 (Fla.1957). It simply does not follow as a matter of logic that in the absence of apparent hazards, as the state appears to urge, a roadway is inherently dangerous if a vehicular accident thereon occurring results in a death.
Similarly, the state's repeated insistence that the Appellant lost control of his vehicle exculpates rather than inculpates his actions. There is no dispute but that Mannella was *345 ejected from the car after the Appellant lost control and that the car, leaving the roadway, struck one then another tree, compromising the structure of the car, and continued to spin out of control. Therefore, the Appellant's culpability must be established, if at all, from the evidence culminating in his loss of control of the vehicle. See Jackson, 100 So.2d at 841.
The principle is well established in this jurisdiction that criminal liability does not attach when the accused is by circumstances and conditions beyond his control and against his will, placed in a position and subjected to the conditions which resulted in the death with which he is charged.
Id. Again, here, as in Jackson, the state presented no evidence tending to establish the nature of traffic conditions or other hazards at or around the scene, and no evidence that those conditions or hazards were such that one driving at the rate of speed indicated by evidence that the jury was entitled to accept in this case thereby evinced culpable negligence. 100 So.2d at 842. In affirming that the Appellant lost control of the vehicle[5] and in pointing to no action culminating in that loss of control legally sufficient to support a finding of culpable negligence, I take the state to have conceded the issue. It is clear from this court's decision in Jackson that losing control of a vehicle does not contribute to culpability in the manner contended by the state.
Pointing to the supreme court's decision in State v. Ellison, 561 So.2d 576 (Fla.1990), in which the court affirmed the decision of this court reducing a conviction on the charged offense of second-degree murder to manslaughter by culpable negligence, the state urges that if the facts as recited by the supreme court in its decision support conviction of manslaughter by culpable negligence, the facts of this case must likewise. In that case, the supreme court observed that following a high speed pursuit, the accused lost control and struck another vehicle head-on, fatally injuring a sixteen-month-old baby. Since the supreme court merely approved the decision of this court, the facts, as more fully elaborated in Judge Joanos's opinion, deserve some consideration.
In May 1988, a gray Grand Am automobile was stolen from a Jacksonville mall. The following day, a police officer observed a gray Grand Am exceeding the speed limit and clocked the vehicle at 67 M.P.H. in a 35 M.P.H. zone. The officer commenced pursuit, and the car began weaving in and out of traffic at high speed, ramming through a blocked toll booth gate at an estimated speed of 65 M.P.H. The car then jumped the median onto a service road, accelerating to approximately 70 M.P.H. and, already fishtailing, entered a major thoroughfare. As it did so, the driver lost control, crossed the center line and struck another vehicle head on, fatally injuring a 16-month old baby who was a passenger in that vehicle.
Ellison v. State, 547 So.2d 1003, 1005 (Fla. 1st DCA 1989). In reducing the second-degree murder conviction to manslaughter by culpable negligence, this court observed that
Ellison weaved through midday traffic at speeds exceeding the posted limits by as much as 35 M.P.H., part of the time in a confined space of a bridge. He deliberately smashed through a closed toll gate and crossed a median, then guided the car onto a well-traveled thoroughfare, still at an excessive rate of speed, so as to lose control.
*346 Id. (emphasis supplied). By contrast, the record in this case fails to include the traffic and road conditions or the Appellant's deliberate disregard of those conditions similar to those considered by this court and accepted by the supreme court in Ellison. There is no record evidence of any deliberate action on the part of the Appellant so as to lose control of the car.
This case is more similar to Maxey v. State, 64 So.2d 677 (Fla.1953). The Maxey court accepted the state's rendition of the physical evidence in that case:
... [T]he physical facts are that defendant Maxey was driving at a fast but undetermined speed around a curve; that he lost control of his car and went across the highway to the left-hand side and skidded along the shoulder some 300 feet; and that he then changed direction slightly and for another 152 feet skidded along in a different direction indicating that he was attempting to regain the highway and then turned over three times, resulting in the death of Felix Brown, who was a passenger in the rear seat.
64 So.2d at 678 (emphasis in the original). The supreme court found that evidence neither consistent with guilt nor inconsistent with innocence. 64 So.2d at 678-79; see also Cannon, 107 So. at 363. Just so in this case. The state simply failed to establish the predicate facts to prove culpable negligence. Furthermore, the state disclaimed the facts necessary to support the conviction under the circumstantial evidence rule: beyond a reasonable doubt by evidence so strong, cogent, and convincing as to exclude every reasonable hypothesis except that of the Appellant's guilt. Defending a challenge on appeal to a circumstantial evidence case, the state has disclaimed the circumstantial proof necessary to support the conviction. What is left on this record is neither consistent with guilt nor inconsistent with innocence.
Comparing the facts of this case with those in which convictions of culpable negligence have been affirmed further exposes the paucity of evidence of the Appellant's culpability. The accident did not occur in a metropolitan area or in congested traffic, and there is no evidence that the Appellant was driving erratically at the time before losing control of the vehicle. Cf. Filmon, 336 So.2d at 590. "There is no question of fog or driving on the wrong side of the road as was present in Lipsey v. State, 154 Fla. 32, 16 So.2d 439 [(Fla.1944)]; or excessive speed on a curve under an overpass and on the wrong side of the road as in Taylor v. State, Fla., 46 So.2d 725 [(Fla.1950)]." Smith, 65 So.2d at 305. The state's case presents nothing like the deliberate endangerment that occurred in Ellison, and the Appellant is no more culpable than other defendants whose manslaughter convictions for traffic deaths have been overturned. Werhan v. State, 673 So.2d 550, 556 (Fla. 1st DCA 1996)(Benton, J., dissenting). I believe that the state has fallen far short of the standard established to sustain a conviction of manslaughter by culpable negligence. For that reason, I would reverse the conviction. I respectfully dissent from the majority's decision holding otherwise.
NOTES
[1] The Appellant was convicted as well of perjury when not in an official proceeding and making a false report regarding a traffic accident. The charges arose from the Appellant's statements to the police investigators that Mannella was driving the car. The Appellant has not challenged his convictions related to these offenses. The record indicates beyond any reasonable doubt that the Appellant was at the wheel and Mannella was in the passenger seat at the time of the accident.
[2] The only evidence in the record concerning the traffic on the road that night was the Appellant's response under oath when questioned by a police investigator. The investigator had recorded his interview with the Appellant at the hospital on the morning of the accident, and the state presented the recording as part of its case. The Appellant stated that there had been no traffic on the road, and that testimony is unrefuted.
[3] The only evidence as to this issue was again the Appellant's recorded statement to the police investigator that the state offered in its case. The Appellant stated that he had not been familiar with the road. Offering nothing to refute the Appellant's statement, the state rather relies on that statement in its mistaken argument.
[4] Quoting again from counsel's argument before this court:

The inherent dangerousness of this roadbecause bear in mind, again, it's dark at night; it's dangerous enough during the daytimebut this is the factor that distinguishes this case from other cases where you have daytime, you have a road that's not inherently dangerous, and you can be speeding on that.
* * * * * *
If you were speeding on the roads in these cases [in which the courts have stated that speed alone is not sufficient to prove culpable negligence] and there wasn't any traffic on the road and the weather was clear, then you are not going to lose control of your vehicle because there's nothing there.
[5] Quoting again from counsel's argument:

He just simply drove so fast on this inherently dangerous road that he lost control of the vehicle.
* * * * * *
[I]n this case it was speed alone. He just simply lost control of the vehicle.
* * * * * *
I do not think you'll find, I do not find another case where the defendant actually lost control of the vehicle before he had the wreck.