DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AUSTIN TYLER ROBERTSON,**
Appellant,

v.

**ELICIA ANTOINE** and **KONOPKA SERVICES, INC.,**
Appellees.

No. 4D2025-0851

[November 19, 2025]

Appeal of nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Bradley G. Harper, Judge; L.T. Case No. 502023CA013305.

Bonnie M. Sack and Daniel S. Weinger of Luks, Santaniello, Petrillo, Cohen & Peterfriend, Fort Lauderdale, for appellant.

Ron Renzy of Sunshine Appeals, P.A., Coral Springs, for appellee Elicia Antoine.

LEVINE, J.

Appellant, a defendant in an automobile accident negligence case, appeals an order granting the plaintiff leave to amend her complaint to add a claim for punitive damages. Appellant argues that the complaint improperly contains a stand-alone count for punitive damages and that the proffered evidence is insufficient for punitive damages. We agree and reverse.

Appellant Robertson was operating a forklift on a public roadway when he was involved in an accident with appellee Antoine, who was driving a vehicle. Antoine initiated a negligence action against Robertson along with his employer, Konopka Services, Inc. After taking depositions, she sought leave to amend her complaint to add a claim for punitive damages.

Antoine argued that Robertson's admission that he operated the forklift on the wrong side of the roadway in violation of sections 316.2225 and

316.1515, Florida Statutes (2022)[1], was sufficient to demonstrate intentional misconduct or gross negligence, entitling her to raise a claim for punitive damages.

In support of her motion for leave to amend, Antoine proffered the following: Robertson's deposition, her own deposition, and the police report. We address these items below in seriatim.

Robertson testified that at the time of the accident, he was working for a subsidiary of Konopka Services and that his job duties included ordering parts, loading trucks, repairing fences, preparing quotes, and "whatever [his boss] asked [him] to do." The morning of the accident, his boss asked him to move five pallets of furniture to a nearby building about twenty feet down the roadway.

Robertson noted that the accident occurred in the morning just as the sun was coming up and that traffic was "pretty dense." He testified that he was not on his phone when the crash occurred or immediately before because he wanted to be aware of his surroundings. He also testified that "[f]orklifts are going up and down that road all the time."

Robertson explained that he was on his third trip back and forth with the pallets of furniture when he first saw Antoine's vehicle as he was about to make a left turn. He testified that she did not look to the side, ran the stop sign, and hit his forklift. He stated:

> I checked the forklift, made sure everything was good, started moving the pallet to the furniture because the day before I put them on pallets. And I'm on like the third one, I drop it up in the front and I—I'm coming back out, I make a left out of our parking lot and I stayed closest to the sidewalk and grass because it was the safest spot for me because it was a busy

[1] The pertinent portion of section 316.2225, subsection (7), states: "On every slow-moving vehicle or equipment . . . or other machinery designed for use and speeds less than 25 miles per hour . . . there must be a triangular slow-moving vehicle emblem SMV as described in, and displayed as provided in, this subsection."

Section 316.1515 provides: "The driver of any vehicle shall not turn the vehicle so as to proceed in the opposite direction upon any street unless such movement can be made in safety and without interfering with other traffic and unless such movement is not prohibited by posted traffic control signs. A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318."

road. And literally, the left turn that I needed to make was like 20 feet, if even, to make the left. So it didn't make sense to me to cut all the way across, just to cut all the way back across, it just felt unsafe. And I knew there was a stop sign right there. I was hoping nobody would run it. So as I was coming up to make my left, I'm looking at my left, I see a red Honda Accord and I noticed she is not looking at me. I said to myself, she is going to hit me. She hit the side of my forklift, like right in the middle. And I pulled off to the side—to the back, parked the forklift, came up to the front, and told my boss what happened immediately. We went out to the front. She pulled her car into our parking lot. She got out, grabbed her bumper, and dragged it over there.

Robertson acknowledged that when the accident occurred, he was in "the wrong lane of travel," stating: "I was on that side because I felt safest over there with the way the busy it gets in the morning. And plus I could see people coming towards me. I didn't expect somebody to run the stop sign and hit me."

When asked whether it was his understanding that he should be driving in the wrong lane for safety, he responded: "In that area, yes, sir. That's like anybody walking down the road on incoming traffic that has no sidewalk to make sure they can see the vehicles coming. That was my understanding. I didn't want to cut across three to four lanes just to make that left right there, I just felt unsafe."

At deposition, Antoine described the traffic conditions at the time of the accident as "clear" stating, "[T]here was nothing." She testified that she was heading to work and was in her lane and stopped at the stop sign. She stated, "I was going to make a right turn to go to work and the other car had a forklift and then ran into me—left his lane and ran into me." She claimed, "I was at the stop sign and I was about to start to make the turn, then he ran into me."

The traffic crash report noted that Robertson was traveling "east in the right westbound lane of 25th Street" and that Antoine "had the right of way." Robertson was found to be at fault for the accident.

Following a hearing, the trial court found that Robertson's admission that he operated the forklift against the flow of traffic was sufficient

evidence of intentional misconduct and permitted Antoine to proceed with a claim against Robertson for punitive damages.[2]

Robertson raises two primary claims on appeal: (1) that Antoine failed to meet the procedural requirements to raise a punitive damages claim, and (2) that Antoine failed to proffer sufficient evidence to support a punitive damages claim.

Our review of an order on a motion for leave to amend to assert a claim for punitive damages is de novo. *Creech v. Santomassino*, 395 So. 3d 549, 552 (Fla. 4th DCA 2024).

A plaintiff must meet several procedural and evidentiary requirements to be permitted leave to amend a complaint to assert a claim for punitive damages. As provided in section 768.72, Florida Statutes (2022):

> (1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure.[3] The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.
>
> (2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional

---

[2] Antoine also argued that she should be entitled to bring a claim for punitive damages against Robertson's employer, Konopka Services. Because Antoine failed to include a punitive damages claim against Konopka Services in her proposed amended complaint and failed to bring sufficient evidence to support a punitive damages claim against the employer, the trial court denied that relief. That issue is not before this court.

[3] Florida Rule of Civil Procedure 1.190(f) states: "A motion for leave to amend a pleading to assert a claim for punitive damages shall make a reasonable showing, by evidence in the record or evidence to be proffered by the claimant, that provides a reasonable basis for recovery of such damages."

4

misconduct or gross negligence.  As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

The trial court did not make any findings of gross negligence and relied solely on a finding of intentional misconduct.  "Although we have de novo review of orders granting or denying motions to add punitive damages claims, de novo review is not a proper substitute for the lack of an affirmative finding in the first instance." *Book v. Sharief*, 418 So. 3d 160, 164 (Fla. 4th DCA 2025) (citation omitted).  In *Book*, this court remanded because the trial court did not make an affirmative finding as to either intentional misconduct or gross negligence.  Here, in contrast, the trial court made an affirmative finding as to intentional misconduct.  Therefore, we limit our discussion to intentional misconduct.

In *Federal Insurance Co. v. Perlmutter*, 376 So. 3d 24, 33-34 (Fla. 4th DCA 2023), *review granted*, No. SC2024-0058, 2024 WL 4948685 (Fla. Dec. 3, 2024), we held:

[A] "reasonable showing by evidence" of "a reasonable basis" for punitive damages means the movant must demonstrate the movant will be able to produce competent, substantial evidence at trial upon which a rational trier of fact could find that the defendant specifically intended to engage in intentional or grossly negligent misconduct that was outrageous and reprehensible enough to merit punishment.

*Perlmutter* further stated that to demonstrate liability based upon intentional misconduct, a claimant needs to make both a pleading and evidentiary showing demonstrating that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.* at 35 (citation and emphasis omitted).  We further explained,

5

"In other words, section 768.72(2) requires an evidentiary showing of specific intent, not general intent, to knowingly engage in wrongful conduct." *Id.* (emphasis omitted). "As the United States Supreme Court, the Florida Supreme Court, and this Court have said, '[punitive damages] are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'" *Id.* at 36 (citation and emphasis omitted).

"[L]ong-established precedent dictates that actions which deserve punitive sanctions involve outrageous conduct, malicious motive, or wrongful intention." *William Dorsky Assocs. v. Highlands Cnty. Title & Guar. Land Co.*, 528 So. 2d 411, 412 (Fla. 2d DCA 1988). "[P]unitive damages are reserved for truly 'culpable conduct,'" where the conduct is "so outrageous in character, and so extreme in degree . . . [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) (citation omitted); *see also Cable News Network, Inc. v. Black*, 374 So. 3d 811, 812 (Fla. 4th DCA 2023) (recognizing that to state a claim for punitive damages, the plaintiff had to proffer a reasonable basis for recovery of such damages).

"[T]he required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter." *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016). The Florida Supreme Court has discussed the required level of proof to demonstrate "culpable negligence" for manslaughter or to authorize the recovery of punitive damages as follows:

> [T]o authorize the recovery of exemplary or punitive damages, the negligence complained of must be of "a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."

*Smith v. State*, 65 So. 2d 303, 305 (Fla. 1953) (citation omitted).

Initially, we find that Antoine improperly pled her punitive damages claim as a stand-alone count. This is impermissible since there is no

6

separate cause of action for punitive damages. *See McGlothin v. McDonald*, 379 So. 3d 535, 535-36 (Fla. 5th DCA 2023) (explaining that Florida law does not permit a stand-alone count for punitive damages). Thus, Antoine failed to satisfy the procedural requirements for raising a claim for punitive damages.

We also agree with Robertson that Antoine failed to proffer sufficient evidence to demonstrate that he engaged in intentional misconduct that rose to the level required by the statute. Robertson's testimony was that he believed that it was safer for him to travel approximately twenty feet on the roadway against traffic, considering the placement of the stop sign, than to make multiple turns across the roadway in his forklift. Although his belief may have been mistaken, that does not demonstrate that he had "actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result." § 768.72(2)(a), Fla. Stat. In fact, Robertson testified that he drove in that fashion in order to lower the probability of injury or damage to others. Robertson's actions do not establish conduct that would permit punitive damages. *See Pinnacle Prop. Mgmt. Srvs., LLC v. Forde*, 372 So. 3d 292 (Fla. 4th DCA 2023) (stating that where a burglar entered an open window and lethally shot a resident, the management company's negligence in failing to expeditiously fix the entrance gate did not establish conduct that would permit recovery of punitive damages). The allegations of Robertson's conduct are more properly characterized as ordinary negligence. The evidence does not show specific intent to knowingly engage in wrongful conduct with actual knowledge of a high probability that injury or damage would occur, nor is this conduct "outrageous and reprehensible enough to merit punishment." *Perlmutter*, 376 So. 3d at 34.[4]

We find that the trial court erred in granting leave to plead punitive damages. The order is reversed and remanded with instructions that the motion for leave to amend Antoine's complaint be denied.

---

[4] We note that a party's violation of traffic law is, standing alone, an insufficient basis for punitive damages. *See Creech*, 395 So. 3d at 554 (finding that a truck driver glancing at his phone in violation of traffic laws did not rise to the level of gross negligence or intentional misconduct needed to assert a claim for punitive damages; rather, "[t]here must be some additional act that shows the cell phone usage was reckless or a conscious disregard of or indifference to others"). Applied here, in this case there is no "additional act" that shows that Robertson's decision to travel twenty feet against the flow of traffic was a reckless or conscious disregard or indifference to others.

*Reversed and remanded.*

KUNTZ, C.J., concurs.
FORST, J., dissents with opinion.

FORST, J., dissenting.

I respectfully dissent. Appellee Antoine has made a "reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of [punitive] damages." § 768.72(1), Florida Statutes (2022). She has not yet established entitlement to damages, let alone punitive damages. However, both parties agree that Appellant Robertson was driving his employer's forklift on the wrong side of the road and against the flow of traffic, and the police accident report determined Robertson had been at fault for the collision of the parties' vehicles. Moreover, Robertson acknowledges that he was consciously driving in the wrong lane. Under these circumstances, a punitive damages "gatekeeper" could permit Antoine to *pursue* punitive damages.[1] A conscious decision to drive on the wrong side of the road could constitute "gross negligence"—"conduct . . . so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat. (2022).

I agree with the majority that Antoine requested punitive damages in the wrong manner, by pleading a stand-alone punitive damages count in an amended complaint. Neither the trial court nor Appellant Robertson recognized this error. Thus, Robertson waived this issue. *See Robins v. Colombo,* 253 So. 3d 94, 97 (Fla. 3d DCA 2018) (finding the challenge to a procedural defect in the claim for punitive damages was unpreserved and "[h]ad Petitioner raised the issue in the trial court by contemporaneous objection, this now-asserted defect could easily have been cured by converting the interlineated amendment to a more formal amended pleading."). The form of Antoine's request to seek punitive damages can be corrected below if we find a substantive basis to affirm the trial court's order granting Antoine leave to add a punitive damages claim.

I further agree with the majority that the trial court erred in granting Antoine's punitive damages motion under section 768.72(2)(a), Florida

---

[1] "The statute requires the trial court to act as a gatekeeper and precludes a claim for punitive damages where there is no reasonable evidentiary basis for recovery." *Bistline v. Rogers,* 215 So. 3d 607, 611 (Fla. 4th DCA 2017).

Statutes (2022), the "intentional misconduct" prong. Antoine's amended complaint adding the punitive damages "count" correctly recited section 768.72(2)'s two grounds for an award of punitive damages: intentional misconduct and gross negligence. Antoine's amended complaint did not specify that she was limiting her punitive damages claim to gross negligence, though the amended complaint did characterize Robertson's conduct as "reckless" and "indifferen[t] to others['] well-being," which indicates she was arguing "gross negligence." The trial court, though arguably reaching the right decision of granting the motion to amend, did so under the wrong subsection, focusing solely on the "intentional misconduct" option and failing to address the "gross negligence" claim. I agree with the majority that Antoine did not proffer any reasonable basis for finding Robertson's driving in the wrong direction constituted "intentional misconduct," as that term has been construed.

Nonetheless, applying "tipsy coachman" analysis, we can adjudicate whether the trial court reached the right result despite using the wrong prong.[2] "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat.

The majority opinion does not directly address the request to seek punitive damages based on a claim of "gross negligence." Like the trial court, the focus is only on whether "intentional misconduct" has been established as a potentially viable claim. Thus, the question remains: *could* a jury find that Robertson's choice to deliberately drive a forklift on the wrong side of the road constituted "conduct [that] was so reckless or wanting in care that it constituted a conscious disregard *or indifference* to the life, safety, or rights of persons exposed to such conduct"? § 768.72(2)(b), Fla. Stat. (2022) (emphasis added).[3]

---

[2] Under the "tipsy coachman" doctrine, an appellate court may affirm a trial court's "right" result, even if the trial court applied the "wrong" reasoning, so long as the record contains any basis to support the judgment. *Garcon v. W. Palm Beach Police Dep't*, 112 So. 3d 768, 770 n.2 (Fla. 4th DCA 2013) (quoting *Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002)).

[3] The majority opinion cites to *Book v. Sharief*, 418 So. 3d 160 (Fla. 4th DCA 2025), for the proposition that "de novo review is not a proper substitute for the lack of an affirmative finding in the first instance." *Id.* at 164. In *Book*, we remanded the case to "the circuit court to make an affirmative finding indicating whether and, if so, how the plaintiff has made a reasonable evidentiary showing that the defendant had committed either "intentional misconduct" or "gross negligence," as those terms are defined in section 768.72(2), and as required for

"In evaluating the sufficiency of the evidence proffered in support of a punitive damages claim, the evidence is viewed in a light favorable to the moving party." *Progressive Select Ins. Co. v. Lloyd's of Shelton Auto Glass, LLC*, 396 So. 3d 916, 922 (Fla. 2d DCA 2024) (quoting *CCP Harbour Island, LLC v. Manor at Harbour Island, LLC*, 373 So. 3d 18, 27 (Fla. 2d DCA 2023)); *see also Cook v. Fla. Peninsula Ins. Co.*, 371 So. 3d 958, 962 (Fla. 5th DCA 2023) ("Thus, it is not whether the wrongful business practice has already been proven, but whether the plaintiff made a sufficient showing by evidence in the record or proffer to establish a *reasonable basis* for it to ultimately be found that the defendant engaged in the wrongful conduct as a business practice."); *Est. of Blakely v. Stetson Univ., Inc.*, 355 So. 3d 476, 481 (Fla. 5th DCA 2022) ("The appellate court views the record evidence and the proffered evidence in the light most favorable to the plaintiffs and accepts said evidence as true for the purpose of reviewing whether a reasonable basis exists for punitive damages.").

Antoine's implicit motion to seek punitive damages asserts that, in light of the deposition statements of Antoine and Robertson, a reasonable basis exists to find Robertson had acted in a grossly negligent manner causing the collision that injured Antoine. As detailed above, the parties agree that Robertson was driving his employer's forklift on a public street on the wrong side of the road. At several points during his deposition, Robertson explained that he was driving on the wrong side of the road "for *my* safety." He also acknowledged that he chose this course of travel motivated by expediency, and he appears to blame Antoine for the collision based on her failure to look out for a forklift driving against traffic.

The proffered evidence that Robertson deliberately drove an industrial forklift against traffic on a public road at dawn during rush hour could, if believed, support the allegation of gross negligence ("the defendant's conduct was so reckless . . . that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."). Accordingly, I respectfully dissent.

*       *       *

***Not final until disposition of timely-filed motion for rehearing.***

---

a jury to award punitive damages under section 768.72(2)." *Id.* At a minimum, per *Book*, this case should be remanded for the trial court to address Antoine's "gross negligence" claims.